THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* LUIS RODRÍGUEZ GARCÍA, Defendant and Appellant.

Nos. 16814, 16820.    Decided May 21, 1962.

*Juan Mari Bras* for appellant. *J. B. Fernández Badillo, Solicitor General, Rodolfo Cruz Contreras* and *Peter Ortiz, Assistant Solicitors General,* for The People.

Division composed of Mr. Acting Chief Justice Pérez Pimentel, Mr. Justice Blanco Lugo, and Mr. Justice Dávila.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

Appellant Luis Rodríguez García was found guilty by a jury of the offense of murder in the first degree, § § 199 and 201 of the Penal Code, 33 L.P.R.A. § § 631 and 633, and sentenced to life imprisonment. The court also found him guilty of a violation of § 4 of the Weapons Law, Act No. 17 of January 19, 1951 (Sp. Sess. Laws, p. 426), 25 L.P.R.A. § 414, and sentenced him to serve four months in jail. He appealed.

1. The trial of the cases having been set for May 28, 1959, the defendant, one week before, filed a motion to the effect that he was confined to the District Jail of San Juan by reason of his inability to post the required bail bond[1] and requesting (a) to be permitted to appear at the trial "in civilian clothes without in any way giving the impression that he is serving a sentence"; (b) that the necessary precautions be taken so that he might appear "at the trial ... properly shaved and his hair cut"; and (c) if it were necessary to bring him handcuffed to the courtroom, to order the guard that "the same be removed before entering the courtroom, so that the jurors may not see the defendant handcuffed." On the same date the court ordered that, "If the defendant is not serving any sentence, bring him in civilian clothes and properly attired. The motion is denied as to other requests."

The trial of the case was continued and was finally held on August 10 to 13 of that year. There is no showing in the record that that motion was reproduced in connection with the trial. The error assigned is the refusal of the court contained in the order of May 21 above transcribed. In that connection, the appellant maintains that, although from the transcript of the record and from the evidence, it does not appear that the defendant was brought handcuffed to the courtroom in the presence of the jury, "the presumption" is that he so appeared, in view of the court's order in connection with the motion in question.

Based on the presumption of innocence to which every accused is entitled,[2] on his right to a fair and impartial

---

[1] The Code of Criminal Procedure is silent on the conditions under which an inmate may appear before a court, merely providing in § 533, 34 L.P.R.A. § 1911, that an order for that purpose may be made by the court.

[2] Commenting the opinion in State v. Coursolle, 97 N.W.2d 472 (Minn. 1959), published in 44 Minn. L. Rev. 155, it is said: "The defendant is presumed innocent until convicted, but the presence in the courtroom of any visible restraints on the defendant or his witnesses tends to alter that presumption by creating a general atmosphere of guilt. Although it is

trial, *State* v. *Brooks*, 352 P.2d 611 (Hawaii 1960) ; *Schultz* v. *State*, 179 So. 764 (Fla. 1938), and on the common-law rule that a defendant should not be subjected to any more restraints than are necessary to assure his presence at the act of the criminal prosecution, *Blair* v. *Commonwealth*, 188 S.W. 390, 393 (Ky. 1916), it has been held that he should appear free from handcuffs and shackles,[3] unless the court, in the exercise of its discretion, determines that it is necessary to prevent his escape or absence from the trial, to prevent acts of violence against or by the defendant, or that the proceedings be conducted adequately and peacefully, *Commonwealth* v. *Russell*, 171 A.2d 819, 822 (Pa. 1961) ; *Way* v. *United States*, 285 F.2d 253 (C.A. 10, 1960) ; *State* v. *Johnstone*, 335 S.W.2d 199, 205 (Mo. 1960) ; *Commonwealth* v. *Agiasottelis*, 142 N.E.2d 386 (Mass. 1957) ; *State* v. *Mangum*, 96 S.E.2d 39 (N.C. 1957) ; *State* v. *Coursolle*, 97 N.W.2d 472, 476 (Minn. 1957) ; *Odell* v. *Hudspeth*, 189 F.2d 300 (C.A. 10, 1951), *cert. denied*, 342 U.S. 873 (1951) ; 5 WHARTON, Criminal Law and Procedure 148, § 2011 (1957 ed.). As stated in *State* v. *Coursolle, supra*, there should be prevented every action which may prejudice the defendant, and this freedom of action—without shackles or handcuffs—is an integral part of a fair and impartial trial. The better practice would be to take testimony as to the necessity for such restrictive measures and state for the record the reasons for so doing, *People* v. *Mendola*, 140 N.E.2d 353 (N.Y. 1957) ; *cf. People* v. *Bryant*, 166 N.Y.S.2d 59 (1957). The court has the right to take also into consideration facts known to it, provided reference is made thereto in the ruling entered, as, for example, prior convictions of the defendant, other

true that the prosecutor can impeach a witness on cross-examination by establishing his prior convictions, the effect on the jury is not as dramatic as is the sight of the witness with handcuffs and shackles."

[3] The same rule applies to witnesses for the defense. *State* v. *Coursolle, supra;* Annotation, *Right of accused to have his witnesses free from handcuffs, manacles, shackles, or the like*, 75 A.L.R.2d 762–65 (1961); 44 Minn. L. Rev. 155 (1959); 31 Minn. L. Rev: 374 (1947).

attempts to escape, etc., *State* v. *McKay*, 165 P.2d 389 (Nev. 1946). Among other factors, there may also be considered the nature of the offense for which the defendant is on trial, his penal history, and his character and reputation, *Blaine* v. *United States*, 136 F.2d 284 (DC DC 1943).

■■ However, in the absence of a clear showing that the court erroneously exercised its discretion or that the appearance of the defendant handcuffed or shackled, or garbed in the clothes of an inmate in a penal institution, has caused him substantial prejudice, a conviction on this ground will not be set aside. Moreover, the defendant must be diligent and call promptly the attention of the court to enable it to take such action as may be necessary to wipe out any unfavorable impression to the members of the general jury panel, or of the jury sitting in the case, if the latter has been formed. *State* v. *Brooks*, 352 P.2d 611 (Hawaii 1960) ; *State* v. *Long*, 244 P.2d 1033 (Ore. 1952) ; *State* v. *McKay*, 165 P.2d 389 (Nev. 1946) ; *Eaddy* v. *People*, 174 P.2d 717 (Cal. 1946) ; *State* v. *Smith*, 8 Pac. 343 (Ore. 1883).

■■ In the instant case there is no evidence to warrant the conclusion that the defendant was brought handcuffed in the presence of the jury, and the question is merely an inference drawn by his attorney in an effort to procure reversal of the sentence. This being so, we cannot reverse the sentence on mere speculations. *People* v. *Lampón*, 78 P.R.R. 102, 106 (1955) ; *People* v. *Arroyo*, 67 P.R.R. 33, 34 (1947). Cf. *Jaca* v. *Delgado, Warden*, 82 P.R.R. 389, 400 (1961).

2–3. The second and third errors are aimed at challenging the orders of the trial court refusing to decree a mistrial as a result of the incident which we turn to consider.

The following incident took place during the cross-examination of the defendant by the prosecuting attorney:

"PROSECUTING ATTORNEY: (To the witness)
"Q: What you say is that you were in a rage, were you mad?

"A: But he was taking what was mine.

"Q. Is it not true, Rodríguez, that you felt angry because Marcelino had slapped you; you were annoyed because he slapped you?

"A: He slapped me twice and it is supposed that my father died and he never slapped me and it is supposed that no one has the right to hit a person because he is asked to give what belongs to him.

"Q: *But have you been in jail?*

"A: *I was in jail once.*

"Q: *And you were in prison for what offense?*

"A: *For mayhem.* I was there once and so was the deceased.

"Q: Wait a moment.

"DEFENSE: An important question has been put by the Prosecuting Attorney.

"JUDGE: Which is it?

"DEFENSE: Whether the defendant was in jail. The issue of defendant's reputation hasn't been raised herein. We will respectfully move for a mistrial.

"PROSECUTING ATTORNEY: In order to get the truth. If he is like any other witness and the defendant or witness may be questioned in order to establish the veracity of his statement as to the guilt in felonies.

"DEFENSE: Any other witness may be asked. But the defendant may only be asked when his reputation is in issue.

"JUDGE: That is true.

"PROSECUTING ATTORNEY: I ask him: 'Have you been in jail?', and he answers: 'I was in jail and I committed said offense.'

"JUDGE: Is there any objection to that?

"DEFENSE: It has already been said and the jury heard it. We insist in the motion for mistrial.

"JUDGE: Ladies and gentlemen of the jury: When a witness testifies, he may be asked if he has been or not in jail, he may be asked about his bad reputation; but when a defendant testifies he may not be asked unless evidence of good reputation has been previously presented. Once evidence of defendant's good reputation has been set forth, then evidence of his bad reputation may be presented. It happens that the question set forth by the prosecuting attorney and answered by the defendant has been objected to but after the question had

already been put and had already been answered. And neither the question nor the answer are pertinent. Thus, ladies and gentlemen of the jury, that you must consider the question as not having been set forth and the answer as unsaid. You must completely strike it from your minds, in everything and in the manner you are capable of forgetting, making an effort to repel that thought at the moment of your deliberation and consideration of the evidence. And inviting you to forget any action of the prosecutor to attack the veracity, I assure you that because a person has gone to jail, whoever he may be, he is not for that reason going to say less truth than a person who has not been. That is like an absolute axiom. Even though it is possible that one who has been in jail may speak less truth than one who has not, or vice versa. One who has not been may be less truthful than one who has. So please do not consider that part of the witness' statement. The motion for mistrial is denied.

"DEFENSE: We very respectfully take exception, and for the purposes of the record we want to set forth that the question and answer followed each other so rapidly that we had no time to object the question, because at the moment when one and another were set forth, we were delivering to the judge a request for special instructions." (Italics ours.)

The case of *People* v. *González*, 80 P.R.R. 203, 205 (1958), decides this question adversely to the appellant. We said:

"The fact that the defendant took the witness stand to testify in his own behalf did not cure the errors assigned. The prosecution tried to impeach the credibility of the defendant but he did not pose the proper question. He merely asked the defendant whether that was the first time that he had had cases of that nature, to which he answered 'I had a previous case.' This question was objected to by the defense and the court sustained the objection but thereafter failed to give any instructions to the jury to disregard the question and the answer of the witness. *Evidence of this nature should not go to the jury because the fact that a defendant says that he has had a previous case does not mean that he has been previously convicted of a felony which is the material evidence to impeach the credibility of a witness on the ground of a prior conviction.*"

As stated in *People* v. *Archeval*, 74 P.R.R. 478, 482 (1953), "Once the defendant takes the witness stand, he becomes a witness just like any other and is subject as any other witness to the same rules and procedures regulating the examination and cross-examination," among which is the impeachment of his credibility by evidence of prior convictions of felony, as provided by § 244 of the Code of Criminal Procedure, 34 L.P.R.A. § 723.[4] Assuming, however, that the rule is not as stated, the prompt intervention of the judge of instance by giving proper instruction not to consider the evidence objected to would cure any prejudicial effect that the incident might have.

The error assigned was not committed.

The sentences pronounced by the Superior Court, Bayamón Part, on August 19, 1959, will be affirmed.

---

[4] Rule 106 of the proposed Rules of Evidence adopted by the Supreme Court on December 27, 1960, would permit the impeachment of the witnesses by evidence of conviction of offenses which affect their credibility, whether felonies or misdemeanors.